IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**LEXIE M. MYERS**                                                **PLAINTIFF**

v.                                                                        **CASE NO. 2:11CV133-B-A**

**GGNSC Holdings, LLC**
**GGNSC Southaven, LLC d/b/a Golden**
**Living Center Southaven**                                        **DEFENDANTS**

**MEMORANDUM OPINION**

Presently before the court is Defendants' motion to dismiss the proceeding or alternatively, to compel arbitration **[9]**. Upon due consideration of the parties' filings and supporting and opposing authority, the court is ready to rule.

Plaintiff Lexie Myers was admitted to Defendants' nursing home, Golden Living, on September 4, 2003. Myers' son, Barry Luka, holds Myers' power of attorney. In creating the document entitled "Power of Attorney," Myers gave Luka authority to "perform any and every act which [she] might do [herself], including the making of contracts . . . ." *See* Power of Attorney at 1. Myers further specifically granted Luka full power and authority to act and ratified all acts performed by Luka.

At the time Myers was admitted to Golden Living, Luka executed a "Resident and Facility Arbitration Agreement" on behalf of Myers. The arbitration agreement provides that "any and all claims, disputes, and controversies . . . arising out of, or in connection with, or relating in any way to any service or health care provided by the Facility to the Resident shall be resolved by binding arbitration . . . ." *See* Resident and Facility Arbitration Agreement, at 1.

During Myers' residency at the Defendants' facility, she suffered an injury as the result of a battery-dead pacemaker. Myers alleges that the nursing facility had a duty to monitor her pacemaker and failed to do so as ordered by her physician on January 22, 2007, and thereafter until January 10, 2008. Myers claims that she began to experience disorientation and confusion in late October 2007. On January 10, 2008, Myers was taken to the hospital after complaints of shortness of breath, dry couch, wheezing, and lethargy. Doctors determined that Myers had a slow heart rate and that the battery in Myers' pacemaker was dead and that the battery had been dead or nearly dead since the end of October 2007. As a result, Myers continues to suffer from a diminished mental capacity.

Plaintiff initiated the instant action alleging negligence, medical malpractice, and deviations from the standard of care owed to a nursing home resident. Defendants move to dismiss Plaintiff's claims, arguing that the statute of limitations has run, and alternatively seek to enforce the parties' arbitration agreement.[1]

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court accepts as true those well-pleaded factual allegations in the complaint. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995). "The district court may not dismiss a complaint under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In ruling on a Rule 12(b)(6) motion to dismiss, the court generally may not look

---

[1] Defendants do not specify a section of Rule 12 under which the motion is brought before the court. Based on Defendants' arguments, the court is of the opinion that Fed. R. Civ. P. 12(b)(6) applies. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Thus, the court will analyze the motion under this section.

beyond the pleadings. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Matters of public record and matters of which the court may take judicial notice as well as documents attached to the complaint are exceptions. *Id.* at 1343 n.6; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2001).

Defendants argue that dismissal is warranted on the grounds that Plaintiff's claims are time barred. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise basis for tolling or the like." *Jones*, 339 F.3d at 366. Plaintiff contends that Miss. Code Ann. § 15-1-69, known as the "savings statute," defeats Defendants motion to dismiss. The savings statute provides, in relevant part:

> If any action, duly commenced within the time allowed, the writ shall be abated, or the action otherwise or defeated, by the death of any party thereto, or *for any matter of form* . . . the plaintiff may commence a new action for the same cause, at any time within one year after the abatement or other determination of the original suit.

Miss. Code Ann. § 15-1-69 (emphasis added).

"Section 15-1-69 applies to those cases '[w]here the plaintiff has been defeated by some matter not affecting the merits, some defect or informality, which [the plaintiff] can remedy or avoid by a new process, the statute shall not prevent him from doing so, provided he follows it promptly, by suit within a year.'" *Marshall v. Kan. City S. Rys. Co.*, 7 So.3d 210, 214 (¶ 16) (Miss. 2009) (citing *Hawkins v. Scottish Union & Nat'l Ins. Co.*, 69 So. 710, 713 (1915)). "The statute is highly remedial and should be liberally construed to accomplish its purpose." *Id.* (citing *Hawkins*, 69 So. at 712).

Plaintiff initiated the first case based on these facts on January 10, 2010, two days prior the running of the statute of limitations. This first suit was filed without Plaintiff providing presuit notice required by Mississippi state statute for suing a defendant medical provider. *See* Miss. Code Ann. § 15-1-36(15). Defendants filed a Motion to Dismiss in the state court case based on the lack of presuit notice and failure to attach an expert consultation, to which Plaintiff failed to respond. Instead, on May 18, 2010, Plaintiff filed a notice voluntarily dismissing the action. No reason was cited for the dismissal.

Plaintiff then served Defendants with presuit notice and subsequently filed suit again in state court on May 16, 2011, within the one-year time line required by the savings statute. Defendants removed the action to this court on June 17, 2011, based on diversity jurisdiction.

In *Crawford v. Morris Transp.*, 990 So.2d 162 (Miss. 2008), the Mississippi Supreme Court considered the applicability of the savings statute when the initial case was voluntarily dismissed. The court held that a voluntary dismissal was a "matter of form" for purposes of the savings statute since the dismissal was not a mere abatement of the action or for any matter of form. The *Crawford* court further distinguished a previous Mississippi Supreme Court case, *W.T. Raleigh v. Barnes*, 143 Miss. 597 (1926), where counsel agreed to a voluntary nonsuit, as follows:

> While the savings statute did not apply to a voluntary dismissal in *Barnes*, we noted that nothing in the record showed that dismissal had been a "mere abatement" of the action or that the dismissal was for any matter of form . . . unlike *Barnes*, the record in this case supports that dismissal was based upon a "matter of form" not affecting the merits - namely a lack jurisdiction due to the absence of a complaint. Crawford inadvertently found himself in a procedural quagmire and made a good-faith effort to preserve his claim.

*Crawford v. Morris Transp., Inc.*, 990 So.2d 162, 174 (¶ 44) (Miss. 2008) (quoting *Barnes*, 143 Miss. at 600).

While *Crawford* involved a voluntary dismissal for lack of jurisdiction, the court finds it instructive as to when a voluntary dismissal falls under the purview of the savings statute. Similarly to *Crawford*, the facts of the case at bar support a finding that Myers dismissed the first state action because she could not remedy her failure to provide presuit notice. By providing presuit notice and filing a second state court action within one year, Myers did not merely abandon the action, but instead appeared to cure the defect and continue to prosecute the case. Therefore, the court determines that there is sufficient evidence in the record to construe that Myers filed a notice of voluntary dismissal in the first action due to her failure to provide presuit notice on the medical provider defendants. The Mississippi Supreme Court has held that the savings statute applies to toll the statute of limitations when a case is dismissed by the court for a plaintiff's failure to provide presuit notice to medical providers, as the statutory notice is a matter of form encompassed by the savings statute. *See Arceo v. Tolliver ("Tolliver II")*, 19 So.3d 67, 74-75 (¶¶ 38-39) (Miss. 2009).

Based on Mississippi Supreme Court precedent as applied to the facts of this case, the court finds sufficient evidence in the record to infer that Plaintiff did not intend to abandon her claim, but merely dismissed the first action as a matter of form in order to serve the necessary presuit notice on the defendant medical provider. As such, the savings statute permitted Myers to refile within a year. The portion of Defendants' motion to dismiss based on the statute of limitations is denied.

Alternatively, Defendants argue that Plaintiff's claim are subject to the parties' arbitration agreement. Congress provided in the Federal Arbitration Act that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, the FAA expresses a strong federal policy in favor of arbitration, and any doubts concerning the scope of arbitration issues should be resolved in favor of arbitration. *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1983); *Mouton v. Metropolitan Life Ins. Co.,* 147 F.3d 453, 456 (5th Cir. 1998).

There is a two-step inquiry to determine whether a party should be compelled to arbitrate. *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). A court must determine if (1) the parties agreed to arbitrate the dispute; and whether (2) "any federal statute or policy renders the claims nonarbitrable." *Id*. Whether the parties agreed to arbitration requires a further analysis: (1) the existence of a valid agreement to arbitrate; and (2) if the dispute in question falls within the scope of that agreement. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Bailey*, 364 F.3d at 264. Under Mississippi law, "[a] valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 37 (¶ 9) (Miss. 2007) (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)).

Plaintiff failed to respond to Defendants' argument that the parties' arbitration clause applies. Defendants claim that the instant case is arbitrable since Myers is a third-party beneficiary to the contract between Defendants and Luka, Myers' son and power-of-attorney.

6

The court finds that Myers would be considered a third party beneficiary to the agreement entered into between Luka and the defendant nursing facility under the principles of Mississippi contract law. "[N]on-signatories may be bound by an arbitration agreement if they are determined to be a third-party beneficiary." *Forest Hill Nursing Ctr. v. McFarlan*, 995 So. 2d 775, 783 (¶ 25) (Miss. Ct. App. 2008). The court must consider whether (1) the contract was entered into for the benefit of the decedent; (2) whether the promisee owed a legal obligation to the third party; and (3) whether that legal obligation connected the third party to the contract. *Id*. at 782 (¶ 21). In *McFarlan*, a resident's granddaughter signed admission paperwork, including an arbitration agreement, as the responsible party. The Mississippi Court of Appeals found that McFarlan, the resident, received the benefits and services flowing from the admission agreement that specifically referenced the terms of her care. *Id*. at 783 (¶¶ 18-24). The court determined that McFarlan's care was the essential purpose of the agreement and that she was bound by all the terms of the contract, including the agreement to arbitrate any legal disputes related to the contract. *Id*.

The arbitration agreement at issue in this case became part of the admission agreement upon execution, as reflected by its express terms. Myers' son, Luka, signed the agreement; however, Myers is named as the resident to be admitted to the facility. Myers' care was the essential purpose of the agreement. *Id*. at 783 (¶ 24). Thus, she is an intended third-party beneficiary of the agreement between the facility and Luka. As such, Myers is bound by the terms of the contract, including the arbitration provision. *Id*.

Alternatively, the court finds Myers executed a valid power of attorney such that Myers' son, Luka, was able to execute a valid arbitration agreement on her behalf. "The power of

attorney must be a writing that (a) authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do, or (b) evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs . . . ." *Monticello Cmty. Care Ctr., LLC v. Estate of Martin ex rel. Peyton*, 17 So. 3d 172, 177 (¶ 15) (Miss. Ct. App. 2009) (quoting Miss. Code Ann. § 87-3-7). Myers' written authorization meets this criteria. First, Myers' writing appoints Luka to "perform any and every act that [Myers] might do [herself], including the making of contracts . . . ." Power of Attorney, at 1. Second, the document grants Luka "full power and authority to do and perform all and every act" and ratified such acts without any condition or contingency. Thus, the power of attorney is valid and Luka had express authority to act on Myers' behalf and to bind her to the arbitration agreement at issue.

It appears to the court that the parties willingly agreed to the arbitration provision, as the agreement is not unconscionable. "Mississippi law defines an unconscionable contract as 'one such as no man in his senses and not under a delusion would make on the one hand, and no honest and fair man would accept on the other.'" *Pride*, 341 F.Supp.2d at 622 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). Mississippi law provides for both procedural and substantive unconscionability. *York v. Georgia-Pacific Corp.*, 585 F.Supp. 1265, 1278 (N.D. Miss. 1984). "Procedural unconscionability may be proved by showing 'a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.'" *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002) (quoting *Pridgen v. Green Tree Fin. Servicing Corp.*,

88 F.Supp.2d 655, 657 (S.D. Miss. 2000)). Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive. *York*, 585 F.Supp. at 1278. The agreement was not a contract of adhesion, as Myers' admission to the facility was not contingent upon the signing of an arbitration agreement, and there is no evidence that the arbitration agreement was otherwise unconscionable.

Finding a valid agreement to arbitrate, the court must now consider whether the parties agreed to arbitrate this dispute. Plaintiff does not contend that the dispute falls outside the scope of the agreement. The court notes that the arbitration agreement language is broad and encompasses all disputes related to the admissions agreement or any service or health care provided by the facility to the resident. Thus, the present dispute need only "touch" matters covered by the agreement to be arbitrable. *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998). The dispute in this case involves alleged negligent acts related to the health care provided to Myers during her residency in the Defendants' facility. The court finds the arbitration agreement encompasses the present dispute and further that no federal statute or policy renders the claims nonarbitrable. As such, the present claim is arbitrable and this portion of Defendants' motion is **GRANTED**. A separate order in accord with this opinion will issue this day.

This, the 8th day of May, 2013.

                                                  /s/ Neal B. Biggers
                                                  **NEAL B. BIGGERS**
                                                  **UNITED STATES DISTRICT JUDGE**